Nari LAKHANEY, Plaintiff,

v.

James F. ANZELONE and Bart
J. Tarulli, Defendants.

No. 91 Civ. 2234 (RLC).

United States District Court,
S.D. New York.

Jan. 30, 1992.

Siller, Wilk & Mencher, New York City (Laure Salerno, of counsel), for plaintiff.

Costantino & Costantino, Copiague, N.Y. (Steven Costantino, of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Nari Lakhaney brings this diversity action to enforce two guarantees of payment ("the guarantees") allegedly executed by defendants James Anzelone and Bart Tarulli. The guarantees were for payment of a promissory note ("the note") executed in favor of plaintiff by 5550 Corp. Plaintiff has moved for summary judgment under Rule 56, F.R.Civ.P. Defendants have not opposed the motion.

## FACTS

On March 8, 1990, 5550 Corp., a New York corporation, executed the promissory note in favor of the plaintiff, a New Jersey resident, as evidence of a loan plaintiff made to 5550. Affidavit of Nari Lakhaney at ¶ 10 [hereinafter Lakhaney Aff.]; Ex.C, Lakhaney Aff. The note provided for payment to "Nari Lakhaney or order," $500,-000 plus 12% interest "as follows: $510,000 (five hundred ten thousand dollars plus interest accrued to the date hereof of sixty thousand dollars, $60,000) plus interest from the date hereof until August 1, 1990 [unreadable] at the rate of $5,000 per month until payment in full." The note provided that 5550 Corp. waived any rights to "presentment for payment, demand, notice of non-payment and dishonor, protest and notice of protest." The note also provided that upon maturity or default, it would bear interest at the rate of "two (2%) per cent per month on the unpaid balance until the date of payment in full." The note also provided that its "maker, endorsers and guarantors" were to be jointly and severally liable to pay costs of its collection, including attorney's fees. It was signed by Bart Tarulli, president of 5550 Corp. and secured by a mortgage on certain New York property owned by 5550. Ex. C, D, Lakhaney Aff.

On the same day,[1] defendants James F. Anzelone and Bart Tarulli, both New York residents, executed guarantees of payment for the note in order to induce plaintiff to make the loan to 5550 Corp. Defendants "unconditionally and irrecovably" guaranteed payment of the note as well as all "reasonable expenses, including reasonable attorneys' fees" incurred by plaintiff in enforcing the guarantees. In addition, 5550 Corp. and plaintiff were given the power to "alter, cancel, release, renew, extend, decrease or increase the amount of the principal or interest." The guarantees also extended to "renewals or extensions of any claims or demands guaranteed under this instrument." The guarantees required any action brought to enforce them to be brought within the County of New York and were notarized by New York notaries. Ex. E, F, Lakhaney Aff.

5550 Corp. and each of the defendants failed to pay plaintiff the principal or the interest on the note. On November 9 and December 10, 1990, plaintiff made written demands for payment on the plaintiffs and on 5550 Corp. On January 18, 1991, plaintiff notified defendants of his intention to pursue all available remedies. Plaintiff subsequently began this action.

## DISCUSSION

### I.

In order to prevail on his summary judgment motion, plaintiff must show that

---

**1.** The Anzelone guaranty was originally dated July, 1989, but was redated March 8, 1990. *See* Ex. E, Lakhaney Aff. The Tarulli guaranty was originally dated July 1989, but was redated to March. The 1989 date was not redated to 1990. However, Tarulli's signature and the guaranty's notarization are both dated March 8, 1990. This indicates that the guaranty was executed on March 8, 1990.

"there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Rule 56, F.R.Civ.P. The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue" which must be reserved for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If plaintiff can demonstrate the absence of a factual issue, then to oppose the motion successfully, defendant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Rule 56) (emphasis removed).[2]

Plaintiff has submitted with his notice of motion a statement of material facts as to which he contends there is no genuine issue for trial, as required by Rule 3(g), S.D.N.Y. Civ.R. [hereinafter Local Rule 3(g)] Also, as permitted by Rule 56, F.R.Civ.P., plaintiff has supplemented his statement with an affidavit and copies of the guarantees, the note and other material. Local Rule 3(g) requires that defendants submit a statement responding to plaintiff's 3(g) statement, and provides that any material fact in plaintiff's statement that is not controverted by the responding statement is deemed to be admitted. Rule 56 requires defendants to submit opposition materials to plaintiff's materials. As this motion is unopposed, defendants have not fulfilled the requirements of either rule. In this situation, plaintiff is only entitled to summary judgment "if appropriate." *See* Rule 56(e), F.R.Civ.P. Hence he must have alleged and supported facts that entitle him to judgment as a màtter of law. *See Anderson, supra*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. In addition, the court must independently search the record to determine if any issue of fact remains. *See Higgins v. Baker*, 309 F.Supp. 635, 639 (S.D.N.Y.1970) (Tenney, J.). As the following discussion indicates, plaintiff has alleged and supported sufficient facts to justify summary judgment in his favor.

## II.

Plaintiff, in his brief, assumes that New York law governs the guarantees and the note but has not explicitly addressed the choice of law issue. Since this is a diversity case, the court must apply the choice of law rules of the forum state, New York. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). New York state courts apply a "'paramount interest' test, which applies the law of the jurisdiction having the greatest interest in the litigation." *Frishberg v. Esprit de Corp., Inc.*, 778 F.Supp. 793 (S.D.N.Y.1991) (Carter, J.) (citation omitted); *see also* New York Annotations, N.Y. U.C.C. Law § 1–105(1) (McKinney 1992) (suggesting that the U.C.C. incorporates New York's significant contacts test.).[3]

The two jurisdictions with a significant interest in the guarantees and the note are New York and New Jersey. New York appears to be the place the guarantees were executed, the location of 5550 Corp. and of the defendants, the location of the property mortgaged to plaintiff to secure the note and the place that the contracts constituting the note and guarantees were breached. In addition, the provisions in the guarantees requiring any suit enforcing the guarantees to be brought within the County of New York implies that the parties intended New York law to govern.[4]

---

2. Plaintiff inexplicably cites New York state cases outlining the standards for summary judgments used in state courts. However, Rule 56 rather than the New York standard governs this motion. *See, e.g., Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

3. Hereinafter, citations to the New York Codification of the Uniform Commercial Code will be designated as "U.C.C. § ——."

4. Under New York law, parties to a contract may choose a state's law to govern their contract as long as the contract bears a "reasonable relation" to that state. *See* N.Y. U.C.C. Law § 1–105(1) (McKinney 1992). Hence, in New York "[t]he intention of the parties, express or implied, generally determines the law that governs a contract." *Compania de Inversiones Internacionales v. Indus. Mortgage Bank*, 269 N.Y. 22, 26, 198 N.E. 617 (1935), *cert. denied*, 297 U.S. 705, 56 S.Ct. 443, 80 L.Ed. 993 (1936). However, the

New Jersey, the other jurisdiction with a significant interest in this litigation, is the place of performance of the contract because the note requires payment at plaintiff's residence in that state. From the foregoing, it is apparent that New York has more significant contacts with this dispute. Therefore New York law governs the guarantees and the note.

### III.

### A.

■■■ Under New York law, guarantees are governed by the rules generally applicable to contracts. If, in a written instrument a person "guarantees" payment of another's debt and describes with precision the obligation to which the person is bound, the instrument is a guaranty. *See Chicago Title & Trust Co. v. Fox Theatres Corp.*, 91 F.2d 907, 909 (2d Cir.1937); *Bank of Italy v. Merchants' Nat'l Bank*, 236 N.Y. 106, 140 N.E. 211, *cert. denied*, 264 U.S. 581, 44 S.Ct. 331, 68 L.Ed. 860 (1923). Consideration for a guaranty must be expressly or impliedly stated in the instrument, and the instrument must be delivered to and accepted by the guarantor. *See Sun Oil Co. v. Heller*, 248 N.Y. 28, 161 N.E. 319 (1928); *Hauswald v. Katz*, 216 A.D. 92, 214 N.Y.S. 705 (1st Dept.1926). Defendants' guarantees, described *supra*, satisfy all these requirements. Since liability under the terms of a guaranty depends on that established by the underlying obligation, defendants' liability will be governed by the terms of the promissory note.

### B.

■■ The promissory note is a negotiable instrument governed by Article 3 of the Uniform Commercial Code (the "U.C.C."). Article 3 requires that the note be signed by the maker, contain an unconditional promise to pay a sum certain, and be payable to order or bearer, in order to be a negotiable instrument. *See* U.C.C. § 3–104(1). The note is signed by Tarulli and contains no conditions on payment. The note's designation that it is payable to "Nari Lakhaney or order" is sufficient to meet the requirement that it be payable to order. *See id.* § 3–110(1).

The sum payable is also required to be certain for the note to be a negotiable instrument. *See id.* §§ 3–104(1), 3–106. The note provides for interest payable "from the date hereof until August 1, 1990 [unreadable] at the rate of $5,000 per month until payment in full." This is written in by hand in the margin. This writing could be interpreted to mean that the interest was to be $5,000 per month only until August 1 or that interest was to be $5,000 per month until payment in full. The "until payment in full" phrase makes the rate ambiguous. Below this writing, the interest rate is designated numerically as 2% per month.[5] *See* Facts, *supra*. The U.C.C. provides that handwritten terms control typewritten or printed ones. *See* U.C.C. § 3–118(b). Hence at least until August 1, the $5,000/month controls the 2%/month rate. After this date, the handwritten notation is ambiguous as to whether the $5,000 per month rate continues or not. However, the U.C.C. also provides that if words are ambiguous then figures control words. *See id.* § 3–118(c). Since the 2% per month rate is written as a figure and the ambiguous "until payment in full" statement is written in words, the 2% rate controls for the period after August 1. Therefore the interest rate meets the requirement that its sum be certain.

■ Article 3 also requires the note to be payable on demand or at a definite time to be negotiable. *See id.* § 3–104(1). The note, however, does not designate a time of payment or indicate that it is payable on demand. Such a note is presumed to be payable on demand unless there is some indication that a date of payment was in-

---

court need not decide whether the parties intended New York law to govern, in light of the disposition of this issue in the text.

5. By the terms of the note, the 2 per cent per month rate applies upon maturity or default.

*See* Facts, *supra*. Since the note is payable on demand, *see infra*, it is mature upon delivery. *See Paine-Erie Hosp. Supply, Inc. v. Lincoln First Bank*, 82 Misc.2d 432, 370 N.Y.S.2d 370 (Sup.Ct. 1975).

tended and mistakenly omitted. *See* U.C.C. § 3–108; Comment 2, U.C.C. § 3–115; *Nuri Farhadi, Inc. v. Anavian*, 58 A.D.2d 546, 396 N.Y.S.2d 26 (1st Dept.1977). Since there is no indication of this, the note is payable on demand.

■ A negotiable instrument must also be supported by consideration, *see* U.C.C. § 3–408, and there is a common law requirement of delivery. However, both lack of consideration and lack of delivery are made defenses by the U.C.C. *See* U.C.C. §§ 3–408, 3–306(c). The defendant has the burden of establishing them once the signature on the instrument has been proven genuine. *See* U.C.C. § 3–307(2). Signatures are presumed to be valid. *See id.* § 3–307(1)(b). As this motion is unopposed, defendants have not challenged signature, consideration or delivery. Therefore the instrument is presumed to be valid in all these respects.

■ Presentment, dishonor and notice of nonpayment, to the extent that they may have been applicable to the note, are waived by the terms of the guarantees. *See* Ex. E, ¶ 3; Ex. F, ¶ 3. Such waivers are enforceable. *See Security Nat. Bank v. De Joy*, 34 A.D.2d 839, 312 N.Y.S.2d 525 (2d Dept.1970). In addition, there is no indication that liability has been discharged.

■ The only remaining issue is whether the post-default rate of interest, 2 per cent per month, is usurious. Under New York law, notes providing for interest in excess of the maximum rate prescribed by statute are void. *See* N.Y.Gen.Oblig. Law §§ 5–501(1), (2), 5–511 (McKinney 1989). However, corporations are prohibited from interposing a defense of usury in any action. *See id.* § 5–521. This prohibition extends to guarantors of loans to corporations, except where a loan is actually made to the individual guarantor to be used to discharge the guarantor's personal obligations. *See Am–Elm Realty, Inc. v. Stivers*, 55 A.D.2d 349, 390 N.Y.S.2d 732 (4th Dept.1977). In the present case there is no indication that plaintiff's loan was made to defendants for their personal use rather than to 5550 Corp., therefore the defense of usury is not available to the defendants in this action.

Since the note appears to be a valid negotiable instrument and no defenses to enforcement have been established, plaintiff is entitled to enforce it against the defendants. *See* U.C.C. § 3–301.

## IV.

Under the terms of the note, plaintiff is entitled to collect (a) $510,000 plus $60,000 interest accrued up to March 8, 1990, (b) $5,000 per month interest from March 8, 1990 to August 1, 1990, and (c) 2 per cent per month interest thereafter, compounded monthly, as follows:

| Item | Amount |
|---|---|
| Principal | $510,000.00 |
| Interest to March 8, 1990 | 60,000.00 |
| Interest from March 8 to August 1, 1990 | 23,871.00 |
| Interest from August 1, 1990 to February 1, 1992 | 254,323.00 |
| Total | $848,194.00 |

## CONCLUSION

Accordingly, plaintiff's motion for summary judgment is granted. Defendants are jointly and severally liable for $848,-194.00, together with attorney's fees, costs and collection costs. Plaintiff is directed to

submit an accounting of his attorney's fees and collection costs to the court.

IT IS SO ORDERED.