**CAVENDISH TRADERS,
LTD., Plaintiff,**

v.

**NICE SKATE SHOES, LTD., Lawrence
Arin, John Connor, Vincent Raffa and
Walter Telford, Defendants.**

**No. 98 Civ. 8604(RLC).**

United States District Court,
S.D. New York.

Oct. 23, 2000.

---

Styles & Wright, P.C., New York City (Thomas E. Stiles, Stephen X. Wright, of counsel), for Plaintiff.

Pirro, Collier, Cohen & Halpern, LLP, White Plains, NY (Mitchell J. Baker, of counsel), for Defendant Walter Telford.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Cavendish Traders, Ltd., ("CTL") brings this diversity action to enforce promissory notes, allegedly executed by the defendant corporation, Nice Skate Shoes, Ltd. ("Nice Skate"), and guaranties of payment allegedly executed by officers of Nice Skate. Plaintiff has moved for

summary judgement pursuant to Rule 56, F.R. Civ. P. Defendant Walter Telford, one of the officers of Nice Skate, has cross-moved for summary judgement. The remaining defendants have not opposed the motion.

## BACKGROUND

Plaintiff CTL is a corporation formed under the laws of Great Britain, whose principal place of business is in London, England. (Cplt.¶ 1.) Its business includes the financing of international sales transactions. (Cusac Aff. ¶ 4.) Defendant Nice Skate Shoe, Ltd. ("Nice Skate") is a New York corporation whose principal place of business is in Valley Cottage, N.Y. (Cplt.¶ 2.) Its business includes the designing, manufacturing and selling of skate board shoes. (Cusac Aff. ¶ 5.) Defendants Lawrence Arin ("Arin"), a resident of Mahwah, N.J., John Conner ("Conner"), a resident of Closter, N.J., Vincent Raffa ("Raffa"), a resident of Northvale, N.J., and Walter Telford ("Telford"), a resident of New York, N.Y., ("defendant guarantors"), were officers, directors, employees and shareholders of Nice Skate. (Cplt. ¶ 3–6; Cusac Aff. ¶ 6.) Trade Solutions, Incorporated ("TSI") is a Nevada corporation, presently inactive, whose business involved consulting and export and import finance activities. (Cusac Dep. pp. 7–9.)

In 1997, the parties to this action entered into three transactions whereby TSI arranged for the plaintiff to finance Nice Skate's purchase of shoes from Korea for import into the United States for resale. (Cusac Aff. ¶ 7.) The structure of these transactions was largely similar. On June 23, 1997, July 10, 1997 and July 12, 1997, TSI and Nice Skate entered into trade finance agreements pursuant to which CTL agreed to finance the purchase of shoes by Nice Skate. (Cplt.¶¶ 9, 22, 34.)

As obligated by the agreements, Nice Skate executed a series of promissory notes to the order of TSI, each of which was accompanied by a written guaranty of payment signed by various officers of Nice Skate. (Cplt.¶¶ 10, 16, 23, 28, 35, 40.) The June 23, 1997 agreement was guaranteed by defendants Arin, Connor, Raffa, and Telford. (Cplt.¶ 16.) The July 10, 1997 agreement was guaranteed by Arin, Connor, Raffa, and allegedly Telford. (Cplt.¶¶ 28.) The July 12, 1997 agreement was guaranteed by defendants Arin and Raffa. (Cusac Aff. ¶ 25.) All three guaranties were made out to both CTL and TSI. (Pl.Exs. C, F, I.) [1]

Nice Skate made several payments in 1997 on the promissory notes pursuant to the June 23, 1997 agreement ("June 23, 1997 notes") but allegedly failed to repay the full amount. (Cplt.¶¶ 12–13.) Nice Skate allegedly made no payments on the promissory notes made pursuant to the July 10, 1997 and the July 12, 1997 agreements ("July 10, 1997 notes" and "July 12, 1997 notes," respectively). (Cplt.¶¶ 25, 37.) On November 17, 1998, TSI made a written assignment of the promissory notes and guaranties to CTL. (Def.Ex. 4.) [2] CTL applied Nice Skate's security deposit of $65,182.44 against the principal of the July 12, 1997 notes. (Cusac Aff. ¶ 26.) CTL then filed a complaint in this court pursuant to 28 U.S.C. § 1332 on December 4, 1998, and moved for summary judgement on May 19, 2000. Plaintiff alleges that a balance of $109,359.47 remains due on the June 23, 1997 notes, a balance of $94,753.41 remains due on the July 10, 1997 notes, and a balance of $4,741.16 [3] remains due on the July 12, 1997 notes. (Cusac Aff. ¶¶ 13, 20, 24, 26.) Plaintiff seeks monetary damages against the defendants, jointly and severally, in the fol-

1. "Pl.Ex." refers to plaintiff's exhibits, as annexed to the Complaint.

2. "Def. Ex." refers to defendant Telford's exhibits, as annexed to Defendant's Notice of Cross–Motion for Summary Judgment.

3. This amount is the difference between $69,923.60, the amount of the July 12, 1997 notes, and $65,182.44, Nice Skate's security deposit.

lowing amounts: Nice Skate, Arin and Raffa—$208,854.04 [4] plus contractual interest though August 31, 1999 of $49,411.74; Connor and Telford—$204,112.88 [5] plus contractual interest of $49,000.00 through August 31, 1999. (Cusac Aff. ¶ 26.)

## DISCUSSION

### I.

To prevail on a motion for summary judgment under Rule 56, F.R. Civ. P., the moving party bears the initial burden to show that there are no genuine issues of material fact to be tried, and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).[6] The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." F.R. Civ. P. 56(e). In addition, the court must independently search the record to determine if any issue of fact remains. *See Lakhaney v. Anzelone*, 788 F.Supp. 160, 162 (S.D.N.Y.1992) (Carter, J.).

In the instant case, plaintiff has submitted with its complaint and notice of motion, a statement of material facts as to which it contends there are no genuine issues for trial, as required by Local Civil Rule 56.1 of the Southern District of New York ("Local Rule 56.1 statement" or "Local Rule 56.1"). Defendants Nice Skate, Arin, Connor and Raffa have not responded to plaintiff's complaint or motion. Therefore, the material facts alleged in plaintiff's complaint and Local Rule 56.1 statement will be deemed admitted against these de-

fendants. *See* Local Rule 56.1(c); F.R. Civ. P. 8(c).

Defendant Telford, on the other hand, has submitted an answer, a Local Rule 56.1 statement, and has cross-moved for summary judgement. When parties cross-move for summary judgment, each motion must be evaluated on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *See Schwabenbauer v. Board of Educ. of City School Dist. of City of Olean*, 667 F.2d 305, 314 (2d Cir.1981).

### II.

■ Both plaintiff and defendant Telford have assumed that New York law applies, but neither has explicitly addressed the choice of law issue. Since jurisdiction is based on diversity of citizenship, the court must apply conflict of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York conflict of law rules, "the law of the jurisdiction having the greatest interest in the litigation will be applied." *Miller v. Miller*, 22 N.Y.2d 12, 15–16, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968).

■ The jurisdictions with the greatest interest in the assignment, guaranties and promissory notes are New York, New Jersey, Illinois and England. New Jersey is the primary residence of three of the defendant guarantors. Illinois is the place where the trade finance agreements were executed. (*See, e.g.*, Pl.Ex. A.) England is

---

4. This amount is the total of $109,359.47 allegedly owed on the June 23, 1997 notes, $94,753.41 allegedly owed on the July 10, 1997 notes, and $4,741.16 allegedly owed on the July 12, 1997 notes. Plaintiff miscalculated, demanding $208,853.94.

5. This amount is the total of $109,359.47 allegedly owed on the June 23, 1997 notes and $94,753.41 allegedly owed on the July 10, 1997 notes. Plaintiff miscalculated, demanding $204,112.00.

6. Actions to enforce promissory notes and guaranties are often particularly appropriate for summary judgment. *See, e.g., Gillberg v. Shea*, 1996 WL 406682, at *2 (S.D.N.Y.1996) (Wood, J.) (granting summary judgment on claim for non-payment of promissory note); *Brookman & Brookman, P.C. v. Schiavoni*, 245 A.D.2d 93, 665 N.Y.S.2d 419, 420 (1997) (granting partial summary judgment for liability under guaranty).

the primary place of business of the plaintiff. New York is the primary place of business of Nice Skate and the residence of one of the defendant guarantors. In addition, the trade finance agreements, (*see, e.g.,* Pl.Ex. A ¶ 13), the guaranties, (*see, e.g.,* Pl.Ex. D ¶ 9), and the assignment, (Def.Ex. 4), all explicitly provide for the governance of New York law. These clauses evince the parties' intention to be subject to New York law. Moreover, choice of law clauses in contracts and loan documents are generally honored in New York. *See Village on Canon v. Bankers Trust Company,* 920 F.Supp. 520, 526 (S.D.N.Y.1996) (Koeltl, J.). Therefore, the balance of interest tips in favor of the application of New York law to the assignment, guaranties, and promissory notes.

### III.

### A.

■ As a threshold matter, the court must address plaintiff's status as assignee of the promissory notes and guaranties in question. Under New York law, "any claim or demand can be transferred," N.Y. Gen. Oblig. § 13–101 (McKinney 1989), unless there is an express provision in the instruments prohibiting assignment.[7] *See, e.g., Backman v. Hibernia Holdings, Inc.,* 1998 WL 427675, at *5 (S.D.N.Y.1998) (Preska, J.) (holding that guaranties are assignable unless applicable instruments expressly state otherwise). Any act or words are sufficient which show an intention to transfer all rights to the assignee, *see Miller v. Wells Fargo Bank,* 540 F.2d 548, 557 (2d. Cir.1976), and no consideration is required where the assignment is in writing and signed by the assignor. *See* N.Y. Gen. Oblig. § 5–1107. The assignee stands in the shoes of the assignor and is subject to the "equities between the original parties." *See Cadle Company v. Nick-*

*elson,* 1996 WL 724740, at *3 (S.D.N.Y. 1996) (Cote, J.) (citing *Dryolin Corp. v. Zwicke,* 17 N.Y.S.2d 974, 975 (1939)).

■ Here the assignment was in writing, signed by TSI, granting all rights, title and interests in the aforementioned promissory notes and guaranties to CTL. Moreover, both the underlying trade finance agreements, (*see, e.g.,* Pl.Ex. A ¶ 12), and the guaranties, (*see, e.g.,* Pl.Ex. C ¶ 9), explicitly reserve to TSI the right to assign all of Nice Skate's obligations. Therefore, CTL may enforce the promissory notes and guaranties in its own name, subject to all defenses existing against TSI.

### B.

■ To establish a prima facie case of default on a promissory note under New York law, a plaintiff must provide proof of the valid note and of defendant's failure, despite proper demand, to make payment. *See Gateway State Bank v. Shangri–La Private Club for Women, Inc.,* 113 A.D.2d 791, 493 N.Y.S.2d 226 (1985), *aff'd,* 67 N.Y.2d 627, 499 N.Y.S.2d 679, 490 N.E.2d 546 (1986). In the instant case, plaintiff has produced copies of the notes in its possession,[8] and Nice Skate, by the terms of these notes, has waived its right to demand and notice of nonpayment. (Pl. Exs.B, E, H). Such waivers are enforceable. *See Lakhaney,* 788 F.Supp. at 164.

■ Under Article 3 of the New York Codification of the Uniform Commercial Code ("N.Y.U.C.C.") (Mckinney 1991), promissory notes constitute valid negotiable instruments if they contain an unconditional promise to pay a sum certain, are signed by the maker, and are payable to order or bearer on demand or at a definite time. *See* N.Y. U.C.C. § 3–104(1). Here, the notes designate that they are payable

---

7. Three exceptions to this basic rule exist, none of which are applicable here.

8. Copies of promissory notes and guaranties are admissible under the best evidence rule,

where, as here, the existence of the original writings and the authenticity and accuracy of the copies are not disputed. *See Chamberlain,* 688 N.Y.S.2d at 346.

"to the order of Trade Solutions Incorporated," the assignor. (Pl.Exs.B, E, H). The sums payable, ranging from $17,515.61 to $95,013.07, and the due dates, are identified with certainty on each of the nine notes. The interest rate on delinquent principal is identified with certainty in the underlying trade finance agreements as four percent over the U.S. dollar prime rate, accruing from the date of stated maturity to the date of payment in full. (*See, e.g.,* Pl.Ex. A ¶ 4.1(d).) [9] Therefore, interest payments on the delinquent payments may also be awarded on summary judgement. *See Lakhaney,* 788 F.Supp. at 163 (holding that interest may be awarded if it meets the requirement that its sum be certain.) On the other hand, although the promissory notes provide that "upon default, the maker agrees to pay all reasonable collection costs and attorney fees for making such collection," (*see, e.g.,* Pl.Ex. B.), such fees and costs are not sums certain, and may not be awarded on summary judgement. *See Borg v. Belair Ridge Development Corp. et al.,* 270 A.D.2d 377, 378, 705 N.Y.S.2d 260 (2000).

The promissory notes contain no conditions on payment and are signed by Arin in his capacity as president of Nice Skate. (Pl.Exs.B, E, H.) *See* N.Y. U.C.C. § 3–403(1), (3). Signatures are presumed to be valid unless specifically contested in the pleadings. *See* N.Y. U.C.C. § 3–307(1). In this case, none of the defendants have contested the validity of Arin's signature. Promissory notes must also be supported by consideration, *see* N.Y. U.C.C. § 3–408, and there is a common law requirement of delivery. *See Lakhaney* 788 F.Supp. at 164. Both the absence of consideration and delivery are defenses, and it is the defendants' burden to establish these defenses once the signature on the instrument has been proven genuine. *See* N.Y. U.C.C. § 3–307(2). None of the defendants have raised these defenses and

therefore the notes are presumed to be valid in these respects.

## C.

As with a promissory note, a prima facie case of default on a guaranty is made out by proof of a valid guaranty and proof of the defendant's failure, despite proper demand, to make payment. *See Brookman & Brookman, P.C. v. Schiavoni,* 245 A.D.2d 93, 665 N.Y.S.2d 419 at 420. CTL has submitted copies of the guaranties, (Pl.Exs. C, F, I), and has made demand on the guarantors for each of the three transactions. (Pl. 56.1 Stmt. ¶¶ 8, 15, 20.)

Under New York law, guaranties are governed by the rules of contracts. *See Lakhaney,* 788 F.Supp. at 163. A valid guaranty must be a written instrument guaranteeing payment of another's debt, describing with precision the obligation to which the person is bound. *See id.* Consideration for the guaranty must be expressly or impliedly stated in the instrument, and the instrument must be delivered to, and accepted by, the guarantor. *See id.*

In the instant case the plaintiff has produced copies of the written guaranties, each of which describes by date, parties and amount, the underlying trade finance agreements, sales agreements and promissory notes being guaranteed. (*See e.g.,* Pl.Ex. C. ¶ 1.) The guaranties clearly state that the obligations of the guarantors are joint and several. (*See e.g.,* Pl.Ex. D. ¶ 2.) The consideration is described as inducement to TSI and CTL to enter into the sales and trade finance agreements. It is well settled that a guaranty executed in exchange for, and as a condition of, a promise to advance funds to a third party in the future, coupled with an actual advance at a later date, is supported by ample consideration. *See First American*

---

**9.** Although the trade finance agreements are silent as to whether this rate accrues annually or otherwise, the court assumes an annual interest rate since the interest rate on non-delinquent principal is per annum. (*See, e.g.,* Pl.Ex. A ¶ 2(d)).

*Bank of New York v. Builders Funding Corporation, et. al.,* 200 A.D.2d 946, 948, 607 N.Y.S.2d 460 (1994).[10] Delivery and acceptance are not contested here.

The New York statute of frauds further requires that promises to answer for the debt of another must be signed by the party against whom enforcement is sought. *See* N.Y. Gen. Oblig. Law § 5–701, subd. a, par. 2. Plaintiff's assertions that all four of the defendant guarantors signed the guaranty relating to the June 23, 1997 agreement, that Arin, Connor and Raffa signed the guaranty relating to the July 10, 1997 agreement, and that Arin and Raffa signed the guaranty relating to the July 12, 1997 agreement, (Pl. 56.1 Stmt. ¶¶ 3, 11, 18), are not contested by the defendants, and therefore will be deemed to be admitted. *See* Local Rule 56.1(c).

Since the promissory notes appear to be valid negotiable instruments and no defenses to enforcement of the notes or the guaranties have been established by Nice Skate, Arin, Connor and Raffa, plaintiff is entitled to enforce them against these defendants. *See* N.Y. U.C.C. § 3–301. Accordingly, the court grants plaintiff's motion for summary judgement against Nice Skate, Arin, and Raffa, jointly and severally, for the principal amount of $208,854.04, and against Connor for the principal amount of $204,112.88, plus interest at a rate of four percent per annum over the U.S. dollar prime rate.[11]

### D.

■ Next, the court turns to defendant Telford's cross-motion for summary judgement. Telford contends that plaintiff's taking of the promissory notes and guaranties is in contravention of Section 489 of the New York Judiciary Law, which prohibits the acquisition of a debt "with intent and for the purpose of bringing an action or proceeding thereon." N.Y. Jud. Law § 489 (McKinney 1983). Defendant Telford supports this contention by pointing to the fact that plaintiff filed this lawsuit a mere 23 days after the assignment was executed, and that the assignment was executed only after a period of failed negotiations, when "it became clear that [Nice Skate was not] going to find a way to pay" TSI or CTL. (Cusac Dep., p. 27.)

The court finds this argument without merit. Early cases analyzing Section 489's predecessor statutes reveal that its purpose was to curtail the practice of attorneys purchasing and filing suit on small notes merely to obtain costs, especially attorney fees. *See, e.g., Baldwin v. Latson,* 2 Barb. Ch. 306, 308, 1847 WL 4161, at \*2 (N.Y. Ch. 1847). New York courts have since strictly construed the statute, holding unlawful only those assignments purchased for the "very purpose" of bringing suit, "and this implies an exclusion for any other purpose." *Moses v. McDivitt,* 88 N.Y. 62, 65, 1882 WL 12577 (1882). Indeed, the Second Circuit has recently held that "the acquisition of a debt with intent to bring suit against the debtor is not a violation of the statute where ... the primary purpose of the suit is the collection of the debt acquired." *Elliott Associ-*

---

**10.** Therefore, the court finds defendant Telford's affirmative defense of lack of consideration for his entrance into the guaranty of June 23, 1997 without merit. (*See* Answer ¶ 4.)

**11.** The court notes that plaintiff had ample right to apply the security deposit exclusively against the July 12, 1997 promissory notes, arguably the least secure of the transactions since it was guaranteed only by Arin and Raffa. The guaranty agreements provide that CTL has the right to apply any security as it may determine, (*see, e.g.,* Pl.Ex. C ¶ 3(c)), and

that CTL may proceed against the guarantors before they have proceeded against or exhausted any security held from the debtor. (*See, e.g.,* Pl.Ex. C ¶ 5.) These provisions, taken together, are broad enough to allow CTL to allocate payments received on the guaranties as it sees fit. *Cf. Chemical Bank v. Ettinger et al.,* 196 A.D.2d 711, 714, 602 N.Y.S.2d 332 (1993) (finding that bank had broad discretion to apply defendant-guarantor's accounts to set off debt because guaranty and other documents expressly granted such discretion).

*ates, L.P. v. Banco de la Nacion,* 194 F.3d 363, 372 (2d Cir.1999).

Here, there is no indication that plaintiff acquired the notes merely for the purpose of stirring up litigation and profiting therefrom. Rather, CTL acquired the promissory notes "for the honest purpose of protecting some other important right of the assignee," namely, to obtain payment in full of a valid debt. *Baldwin,* 1847 WL 4161 at *1. CTL is the party that furnished the trade financing to Nice Skate, and is explicitly so named in the underlying trade finance agreements and guaranties. (*See, e.g.,* Pl.Ex. A, C.) Moreover, the fact that CTL officially acquired the promissory notes only after a failed period of negotiations does not change the primary purpose of the acquisition. *Moses* makes clear that an assignment is "not made illegal by the existence of the intent at the time of the purchase . . . to bring suit upon them if necessary for their collection." *Id.* 88 N.Y. at 65. Plaintiff's primary goal remained repayment on its loans.

### E.

Lastly, the court addresses Telford's assertion that there are a "plethora of factual issues . . . which mandate denial of plaintiff's application for summary judgement." (Baker Aff. § 18.) First, Telford posits that there remain factual issues regarding the intent of the plaintiff in taking on the assignment. Telford supports this claim by citing to *Sprung v. Jaffe,* 3 N.Y.2d 539, 169 N.Y.S.2d 456, 147 N.E.2d 6 (1957). In *Sprung,* the Second Circuit reversed a grant of summary judgment to the plaintiff-assignee of a debt instrument on the grounds that the debtor's claim that the assignee had violated a predecessor statute of Section 489 presented a genuine factual dispute as to the intent and purpose of the assignee, and the plaintiff had failed to provide sufficient proof of a purpose for acquiring the debt other than

bringing suit. *See id.* at 544, 169 N.Y.S.2d 456, 147 N.E.2d 6. However, the facts of *Sprung* reveal that the assignee was an attorney who purchased $3,000 in debt for a mere dollar, and the claim could have as readily been brought in the name of the executor of the relevant estate. *See id.* at 541–42, 544, 169 N.Y.S.2d 456, 147 N.E.2d 6. Where, as here, the assignee is the company that has outlaid over two hundred thousand dollars in financing, plaintiff has met its burden to prove that the primary purpose of assignment was payment on its obligations and not earning expenses related to litigation. Since Telford has not set forth any additional facts showing that a genuine issue regarding intent exists, the defendant's "mere allegation" that such an issue exists will not suffice to defeat plaintiff's motion for summary judgment. F.R. Civ. P. 56(e).

■ Second, Telford disputes the validity of his signature on the guaranty pursuant to the July 10, 1997 agreement. (Telford Res. ¶ 2.) [12] He points to the guaranty agreement contained in Exhibit F of the Complaint, as well as Exhibit H attached to the Cusac Affidavit, both of which do not contain his signature. Plaintiff asserts that Telford signed the guaranty and sent it via fascimile to Arin on July 18, 1997. (Cusac Aff. Ex. H., Pl. Reply Aff. ¶ 8.) As this dispute raises a genuine issue of material fact, the liability of Telford as to the guaranty made pursuant to the July 10, 1997 trade finance agreement may not be resolved on summary judgment. *See Seoulbank v. D & J Export and Import Corp. et al.,* 270 A.D.2d 193, 707 N.Y.S.2d 12, 14 (2000) (finding summary judgment inappropriate where authenticity of signature on guaranty was disputed).

■ Finally, Telford asserts that he has insufficient knowledge, absent discovery, to dispute plaintiff's allegations as to amounts owed. When one party has yet to

---

**12.** "Telford Res." refers to Defendant Walter Telford's Response to Plaintiff's Local 56.1 Statement.

exercise its opportunities for pretrial discovery, summary judgment is inappropriate. *See Rail Europe, Inc. v. Rail Pass Express, Inc.*, 1996 WL 157503, at *9 (S.D.N.Y.1996) (Leisure, J.). Under Rule 56(f), F.R. Civ. P., the court may deny summary judgment or order a continuance to permit additional discovery where the non-moving party has submitted an affidavit showing "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Haran v. Dow Jones & Co., Inc., et. al*, 216 F.3d 1072, 2000 WL 777982, at *3 (2d. Cir.2000) (citing *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999)).

In a signed affidavit, Telford contends that as a product designer, he had neither knowledge of, nor involvement in the finances of Nice Skate. (Telford.Aff.¶ 7.) He asserts that he was repeatedly told by Arin, the person who allegedly "controlled" Nice Skate's finances, that the debt was paid.[13] (Telford Aff. ¶ 9.) Moreover, he states that his present relationship with the co-defendants is strained and that he has been unable to obtain any discovery from them. (Telford Aff. ¶ 10.) Based on these allegations, Telford has met his burden to prove his need for further discovery. Plaintiff's motion for summary judgement on the guaranty made pursuant to the June 23, 1997 agreement is denied as to Telford, with leave to renew once discovery is complete.

## CONCLUSION

Accordingly, plaintiff's motion for summary judgment is granted in part, and denied in part. Defendants Nice Skate, Arin and Raffa are jointly and severally liable for $208,854.04, together with interest at a rate of four percent per annum over the U.S. dollar prime rate, attorney's fees, and collection costs. Defendant Connor is jointly and severally liable for $204,112.88, together with interest at a rate of four percent per annum over the U.S. dollar prime rate, attorney's fees, and collection costs.

Plaintiff is directed to present to the court a detailed statement of attorney's fees, collection costs, and interest on delinquent principal. Defendants may file opposing papers disputing these amounts.

The court denies plaintiff's motion for summary judgement as to defendant Telford's liability on the July 10, 1997 notes. The court dismisses without prejudice plaintiff's motion for summary judgment as to defendant Telford's liability on the June 23, 1997 notes until further discovery is conducted. Defendant Telford's cross-motion for summary judgment is denied.

**IT IS SO ORDERED.**

---

**13.** This argument is an affirmative defense available only to defendant Telford. As noted above, the other defendants did not respond to plaintiff's Local Rule 56.1 statement, and therefore the material facts set forth therein are deemed admitted against them. Telford, however, submitted a response to plaintiff's Local Rule 56.1 statement, asserting insufficient information as to exact monies, if any, paid. (Telford Res. ¶ 1.)