**EXPORT–IMPORT BANK OF the UNITED STATES, Plaintiff,**

v.

**AGRICOLA DEL MAR BCS, S.A. de C.V., Grupo Batiz CGH, S.A. de C.V., Greenver, S.A. de C.V., Invernados La Pequena Joya, S.A. de C.V., Raul Guillermo Batiz Guillen, Jorge Guillermo Batiz Guillen, Defendants.**

No. 07 Civ.2008(CM).

United States District Court, S.D. New York.

Feb. 20, 2008.

Danielle Gentin Stock, Assistant United States Attorney, New York, NY, Danna Drori, U.S. Attorney's Office, New York, NY, for Plaintiff.

Hetal Satish Dhagat, Peter Nicholas Flocos, Kirkpatrick & Lockhart Preston Gates Ellis, LLP, New York, NY, Ramiz Issam Rafeedie, Robert Ted Parker, Kirkpatrick & Lockhart Preston Gates Ellis, LLP, San Francisco, CA, for Defendants.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

McMAHON, Judge.

### Introduction

The instant matter involves one defendant debtor, five defendant guarantors and a federal agency; one completely frivolous affirmative defense, and one addition problem only a lawyer could not solve.

For the reasons discussed below, Plaintiff's motion for summary judgment is granted.

### Background

The material facts are not in dispute.

Plaintiff is the Export–Import Bank of the United States (Ex–Im). Ex–Im is a federal agency, organized as a wholly owned government corporation, funded through congressional appropriations. Scalia Decl. ¶ 2; 12 U.S.C. § 635 *et. seq.* Its mission is to maintain and increase U.S. employment by providing financial support for export sales by overseas buy-

ers. *Id.* In pursuit of this goal Ex–Im offers a variety of financial services, including guarantying loans made by private banks to individuals or corporations exporting US-made goods. Pl.'s Mem. at 2.

Defendant Agricola Del Mar BCS, S.A. de C.V. (Agricola) is a Mexico-based "agricultural concern" in the business of purchasing US-made farm machinery for use in Mexico. Defs.' Mem. at 2. The remaining Defendants are guarantors of a loan that was taken by Agricola, and guaranteed by Ex–Im. *Id.* Defendants Grupo Batiz CGH, S.A. de C.V., Greenver, S.A. de C.V., and Invernados La Pequena Joya, S.A. de C.V. (Corporate Guarantors), are corporations organized under the laws of Mexico; Defendants Raul Guiliermo Batiz Guillen and Jorge Guiliermo Batiz Guillen (Individual Guarantors) are individuals. Pl.'s Ex. 2, Term Credit Agreement, ¶ 1.

In April 2001, Ex–Im entered into a master guarantee agreement with First International Bank (First)[1], which was to govern the terms of the loan guarantees between the banks. Pl.'s Mem. at 3; Pl.'s Ex. 1, Master Guarantee Agreement. Pursuant to that agreement, Ex–Im would guarantee individual loans under specific terms set forth in an annexed letter; if the borrower defaulted on its loan, Ex–Im would pay First any outstanding principal and interest. *Id.* at 2–3. In exchange, First would assign all legal rights and claims in the loan balance to Ex–Im. *Id.* These terms appear to be standard for Ex–Im loan guarantees. *Id.*

On September 24, 2002, Agricola entered into a loan agreement with First, for approximately $1.75M. *Id.* at 2. The loan was guaranteed by each of the Guarantor Defendants. *Id.* at 3–5. Ex–Im guaranteed the loan by issuing an annex letter to the master agreement between Ex–Im and First. *Id.* at 2; Pl.'s Ex. 3.

Over the next several months, Agricola executed seven notes, each guaranteed by all of the Guarantor Defendants. Pl.'s Mem. at 3–5. The amounts due on the Notes are as follows: Note of November 24, 2002, for $687,847.03; Note of December 13, 2002, for $349,417.97; Note of December 24, 2002, for $206,764.60; Note of January 23, 2003, for $180,935.35; Note of January 24, 2003, for $103,624.28; Note of January 24, 2003, for $81,764.00; Note of January 30, 2003, for $155,102.28. *Id.; see also* Pl.'s Exs. 4–10.

The terms of each Note are the same (except, of course, for the amount due). Each Note contains Agricola's "unconditional[ ] promise[ ]" to pay the principal and interest due on each note in the specified installments. Pl.'s Exs. 4–10, ¶ I. Each Note also contains a guarantee by each of the Guarantor Defendants to be responsible "jointly and severally, hereby absolutely, irrevocably and unconditionally" for the "prompt payment of . . . any and all amounts due under the Note when and as due in accordance with its terms." *Id.* ¶ Guarantee. Both the Notes themselves, signed by Agricola, and their attached guarantees, signed by each of the Guarantor Defendants, contain waivers of all rights to demand, and waivers of all defenses to which the Defendants might be entitled. *See* Pl.'s Exs. 4–10, ¶ XIV ("The Maker hereby waives demand, diligence, presentment, protest and notice of every kind . . . . [T]he Maker also waives all defense[s] of the Maker and all defense[s] of a surety or guarantor to which it maight [sic] be entitled to by statute or otherwise."); *Id.* ¶ Guarantee ("[Defendant Guarantors] accept the . . . terms [of the agreement], including the waiver of diligence, presentment, demand, protest or

---

**1.** First later changed its name to UPS. *See* Pl.'s Ex. 1A.

notice.... The undersigned also waives all defenses of the Maker and all defenses of a surety or guarantor to which it might be entitled by statute or otherwise.").

The Notes also contain the stipulation that, "[t]he failure of the holder hereof or of [Ex–Im] to exercise any of its rights hereunder in any instance shall not constitute a waiver thereof in that or any other instance." *Id.* ¶ XIV. The guarantees incorporate this, and all other, terms of the Notes. *Id.* ¶ Guarantee.

After paying the first five installments on each of the seven notes, Agricola defaulted. Pl.'s Mem. at 5; Defs.' Resp. to 56.1 Statement, ¶ 10. On October 26, 2005, UPS Business Capital (UPS), f/k/a First (see supra), sent demand letters to the Guarantor Defendants, despite the fact that the parties had explicitly waived their right to demand. Pl.'s Mem. at 5; Pl.'s Ex. 13. No payments were made in response to these demands. Pl.'s Mem. at 5.

Accordingly, pursuant to the terms of the master loan guarantee agreement, UPS assigned all its interest and rights on the Notes to Ex–Im in exchange for the then outstanding balance of the loan, $939,949.07.[2] Pl.'s Mem. at 5–6. These funds were paid by Ex–Im out of congressionally appropriated funds. Pl.'s Reply at 3–4. Ex–Im then demanded payment from Agricola and the Corporate Guarantors (though not the Individual Guarantors). Pl.'s Mem. at 6. No payments were made in response to these demands. *Id.* Ex–Im then pursued private collection, as well as settlement negotiations. *Id;* Scalia Decl. ¶ 20. When this too proved unavailing, Ex–Im filed suit here to collect the outstanding principal and interest on the Agricola notes, for which the guarantors

are jointly and severally liable, in the amount of $1,106,905.77. *Id.*

Plaintiff now moves for summary judgment under Federal Rule of Civil Procedure 56, arguing that it has established the elements for a collection claim as to both Defendant Agricola as debtor and the Guarantor Defendants. Ex–Im argues that the boilerplate affirmative defenses raised by Defendants in their Answer are insufficient, as a matter of law, to raise an issue of material fact for trial.

Defendant does not contest the debt or the default, but opposes summary judgment based on Ex–Im's failure to make demand of the Individual Guarantors. It also argues that the provisions for calculating default interest are ambiguous, necessitating a trial to determine their precise meaning.

Because both of Defendants' positions are devoid of merit, Plaintiffs motion for summary judgment is GRANTED,

### Discussion

#### i. *Summary Judgment Standard*

A motion for summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In addressing a motion for summary judgment, the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Whether any disputed issue of fact exists is for the court to

---

**2.** To be precise, Ex–Im Bank paid the claim amount not to UPS, but to the Private Equity Funding Corporation (PEFCO), which had succeeded UPS's interest in the loan. None-

theless, UPS retained the Ex–Im guarantee and continued to service the loan until it assigned the loan and promissory Notes to Ex–Im.

determine. *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986).

Finally, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the non-movant.

ii. *Ex–Im's claims are established as a matter of law*

■ As a threshold matter, the court must address plaintiff's status as assignee of the promissory notes and guaranties in question. Under New York law, "any claim or demand can be transferred," N.Y. Gen. Oblig. § 13–101 Law (McKinney 2001), unless there is an express provision in the instruments prohibiting assignment. *See, e.g., Backman v. Hibernia Holdings,*

*Inc.*, 1998 WL 427675, at *5 (S.D.N.Y.1998) (holding that guaranties are assignable unless applicable instruments expressly state otherwise). Any act or words are sufficient which show an intention to transfer all rights to the assignee, *see Miller v. Wells Fargo Bank*, 540 F.2d 548, 557 (2d. Cir.1976), and no consideration is required where the assignment is in writing and signed by the assignor. *See* N.Y. Gen. Oblig. Law § 5–1107. The assignee stands in the shoes of the assignor and is subject to the "equities between the original parties." *Cadle Company v. Nickelson*, 1996 WL 724740, at *3 (S.D.N.Y. Dec.17, 1996) (citing *Dryolin Corp. v. Zwicke*, 17 N.Y.S.2d 974, 975 (N.Y.Mun.Ct. 1939)).

■ Ex–Im is a valid assignee. The underlying agreements make no provision prohibiting the assignation of the debt; indeed, the agreement explicitly contemplates the assignation of the debt. Pl.'s Ex. 2, Loan Agreement, ¶ H. The assignment of the debt to Ex–Im is in writing, and its validity is undisputed by Defendants. Thus, Plaintiff has a right to pursue collection standing in the shoes of the First/UPS, the original creditor. *Miller*, 540 F.2d at 557.

■ To establish a *prima facie* case of default on a promissory note under New York law, Ex–Im Bank must provide proof of the valid note and of defendant's failure, despite proper demand, to make payment. *See Gateway State Bank v. Shangri–La Private Club for Women, Inc.*, 113 A.D.2d 791, 493 N.Y.S.2d 226 (2d Dept.1985), affd, 67 N.Y.2d 627, 499 N.Y.S.2d 679, 490 N.E.2d 546 (1986). A plaintiff is excused from making its demand when Defendant has waived its right thereto. *Lakhaney v. Anzelone*, 788 F.Supp. 160, 164 (S.D.N.Y. 1992) ("[Waivers of the right to demand] are enforceable.") (citing *Security Nat.*

*Bank v. De Joy*, 34 A.D.2d 839, 312 N.Y.S.2d 525 (2d Dept.1970)).

■ As with a promissory note, a *prima facie* case of default on a guaranty is made out by proof of a valid guaranty and proof of the defendant's failure, despite proper demand, to make payment. *See Brookman & Brookman, P.C. v. Schiavoni*, 245 A.D.2d 93, 665 N.Y.S.2d 419, 420 (1st Dept.1997). Under New York law, guaranties are governed by the rules of contracts. *See Lakhaney*, 788 F.Supp. at 163. A valid guaranty must be a written instrument guaranteeing payment of another's debt, describing with precision the obligation to which the person is bound. *Id.* Consideration for the guaranty must be expressly or impliedly stated in the instrument, and the instrument must be delivered to, and accepted by, the guarantor. *Id.* Further, liability under a guaranty depends on the terms of the underlying promissory note. *Id.* ("Since liability under the terms of a guaranty depends on that established by the underlying obligation, defendants' liability will be governed by the terms of the promissory note.").

### iii. *Defendants' affirmative defense fails as a matter of law*

Defendant concedes that Plaintiff has made out its collection claims as to all its elements, as to all defendants *except* the Individual Guarantors. Because Ex–Im did not make any demand of these Individuals, Defendants argue, Ex–Im has not established a necessary element of their collection claim as to them. Def.'s Mem. at 3. Although Defendants acknowledge that the loan guarantees explicitly waive any right to demand, they argue that Plaintiff is estopped from enforcing that agreement, because Plaintiffs predecessor in interest, UPS, made a demand on all of the Defendants. *Id.* Defendants argue that

UPS sending demand letters to all Defendants "resurrected the demand obligation," so that Ex–Im is now estopped from asserting that right, or that UPS's conduct had the effect modifying the Notes in such a way as to make demand a precondition for recovery here. See Defs.' Mem. at 3–4 ("Ex–Im Bank is estopped from enforcing that clause [i.e. the clause containing Defendants' waiver of right to notice and demand].... UPS['s] conduct had the effect of modifying the terms of the written agreement....").

■ This argument, whether phrased in terms of modification or estoppel, can be rejected on numerous, independently sufficient, grounds.

■ First of all, each Guarantor Defendant signed seven "unconditional" agreements to repay Agricola's debt, in each waiving its rights to any affirmative defenses it may otherwise have. Pl.'s Exs. 4–10, ¶ Guarantee (Guarantors "jointly and severally, hereby absolutely, irrevocably and unconditionally guarantee [payment] To the maximum extent permitted by law [Guarantors] also waive[ ] all defenses ... to which it might be entitled by statute or otherwise."). An unconditional waiver of defenses is valid and enforceable when entered into voluntarily. *See The Bank of New York v. Tri Polyta Finance, B.V.*, 2003 WL 1960587, at *4 (S.D.N.Y. Apr.25, 2003) ("As the terms of the Guarantee are unambiguous and convey that the contract is unconditional, defendant ... has waived any and all affirmative defenses."); *see also Citicorp Leasing, Inc. v. United American Funding, Inc.*, 2005 WL 1847300, at *6 (S.D.N.Y. Aug.5, 2005) (granting summary judgment against guarantors and holding that unconditional guarantees barred assertion of equitable defenses, including estoppel). There is no evidence suggesting that these businessmen were forced to sign the agreements

(which were written in both English and Spanish) against their will. Therefore, this defense, however construed, fails as a matter of law.

Alternatively, the Notes stipulate that no conduct by the Note holder or its successors shall constitute a waiver of any rights (including the right to payment without making demand). Pl.'s Exs. 4–10, ¶ XIY ("The failure of the holder hereof or of [Ex–Im] to exercise any of its rights hereunder in any instance shall not constitute a waiver thereof in that or any other instance.") The guarantees incorporate this, and all other, terms of the Notes. *Id.* ¶ Guarantee. This language is sufficient to preclude the legal situation Defendants now assert, namely that UPS's conduct had the effect of destroying Ex–Im's right to pursue collection without making demand on the Defendants. Therefore, even if Defendants had not waived their affirmative defenses *en masse,* any affirmative defense based on UPS's or Ex–Im's conduct is precluded, as a matter of law, from the outset.

■ Third, the Government is not subject to estoppel when appropriated funds are at stake absent extraordinary circumstances; circumstances so extraordinary that they have never been held to obtain. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 434, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("As for monetary claims, it is enough to say that this Court has *never* upheld an assertion of estoppel against the Government by a claimant seeking public funds.") (emphasis added); *id.* at 422, 110 S.Ct. 2465 ("Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel to the Government, yet we have reversed every finding of estoppel that we have received."). It is uncontested that Ex–Im Bank is a government agency, and that it paid the balance of Agricola's loan to UPS with funds appropriated from the public fisc. Even if this rule is not a complete bar, the Court has been clear that an ordinary estoppel claim will not do, and Defendants give me no reason think that this case is by any measure "extraordinary." *Office of Personnel Management,* 496 U.S. at 426, 110 S.Ct. 2465.

Even in the absence of these grounds, the defense also fails on its own terms. *See e.g., Overall v. Estate of L.H.P. Klotz,* 52 F.3d 398, 403 (2d Cir.1995) (holding that defendant bears the burden of proof on affirmative defenses).

To the extent that Defendants are asserting modification, they do not allege that there was mutual assent manifested to the modification, or that there was consideration for the modification. N.Y. Jur.2d, Contracts, § 483 ("Fundamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms.") (citing *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, (2d Cir.2003); *Beacon Terminal Corp. v. Chemprene, Inc.,* 75 A.D.2d 350, 429 N.Y.S.2d 715 (2d Dep't 1980)). No consideration was alleged, and certainly none was given. Defendants' modification claim thus fails as a matter of law.

■ To the extent that Defendants are asserting an estoppel, they have failed to offer any evidence that they relied to their detriment on UPS's conduct. Under New York law, in order for conduct to lead to an estoppel of a party's claimed contractual rights (here, Ex–Im's right under the Notes to pursue collection without making demand), there must be conduct inconsistent with the exercise of that right, and the party asserting the estoppel must have relied on that inconsistent conduct to its detriment. N.Y. Jur.2d, Estoppel, etc., § 3 *et seq; see also Heckler v. Community*

*Health Services of Crawford County, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 ("[T]he party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse, and that reliance must have been reasonable in . . .") (internal quotation marks omitted) (footnote omitted).

Moreover, the court cannot imagine any possible way in which the Individual Defendants relied on UPS's demand at all, let alone to their detriment. UPS sent a demand letter to the Individual (as well as the other) Defendants. Pl.'s Ex. 13. The demand was unequivocal, and stating that the loan was in default and that "full payment" was due. *Id.* The letter specified the amount due, the due date and made it clear that interest would continue to accumulate until the debt was paid in full. *Id.* What, then, could the Individual Defendant have done in reliance on these letters? These letters could not have induced the Defendants *not* to pay. Likewise, the letters could not have induced Defendants to await (1) an assignment of the debt and (2) a second, redundant, demand letter.

The situation might differ if the UPS letters stated that demand would be considered effective upon Ex–Im's sending their own demand letter; in that case, Defendants might have delayed payment while awaiting the second letter, thinking themselves safe from the accrual of post-default interest.

However, that is not what happened here. If Defendants relied in any sense, it was not to their detriment, since they knew the debt was due and that interest would accrue until payment, and nothing they did subsequently changed that. If there is any sense in which Defendants did rely to their detriment, such reliance could

not have been reasonable. Thus, the estoppel claim fails on its own terms.

Finally, even assuming—contrary to the fact—that a modification or estoppel defense were available, the uncontested facts do not support it. Ex–Im Bank, as assignee, stands in UPS's shoes; because UPS made their demand of all Defendants, so did Ex–Im Bank. *Cadle Company v. Nickelson,* 1996 WL 724740, at *3 (S.D.N.Y. Dec.17, 1996) (noting that an assignee stands in the shoes of the assignor and is subject to the "equities between the original parties.") (citing *Dryolin Corp. v. Zwicke,* 17 N.Y.S.2d 974, 975 (1939)). Even if this was not impliedly the case, UPS's demand letters (sent to *all* Defendants) stated explicitly that they were made on behalf of Ex–Im Bank. Pl.'s Ex. 13 ("UPS[ ] f/k/a First . . . individually *and on behalf of the Export–Import Bank of the United States* formally demands *full payment* of the above-captioned loans.") (emphasis added).

iv. *Proper calculation of interest does not raise disputed issue of material fact for trial*

Contrary to Defendant's suggestion, the agreement term specifying the amount of interest to be paid is not ambiguous. Paragraph I of each promissory Note specifies the applicable interest rate as "equal to three percent (3.00%) above the London Interbank Offered Rated ('LIBOR'), as said rate is defined below." Pl.'s Exs. 4–10, ¶ I. The parties do not dispute that this rate applied to the Notes until Agricola's default.

The "moving target" cited by Defendants is the rate to be applied in the event of default. Defs.' Mem. at 4. Paragraph IV of each promissory Note specifies that interest rate as follows: "[Upon default], interest on this Note shall accrue at a rate . . . equal to five percent above the Special

LIBOR, as such is defined below." Pl.'s Exs. 4–10, ¶ IV. Paragraph IV also provides that the Note holder has the right to charge an additional 1% "above the interest rate then applicable" on any unpaid principal and interest. *Id.* Because the rate in effect after Defendants' default was 5%, Ex–Im Bank was then entitled to charge 6% over Special LIBOR on any outstanding amounts. *Brackley Decl.*, ¶ 4.

The alternative reading suggested by Defendants, according to which it is unclear whether the post-default rate could be either 5% (as provided for in ¶ IV) or 8% (the pre-default rate *plus* the default rate) over LIBOR, does not accord with the plain language of Paragraph IV. Nothing in the language of either paragraph I or IV indicates that the rates would be added to each other. Paragraph IV says that the rate upon default shall be "equal to" 5%, and that the Maker shall pay an additional 1% on all overdue amounts. *Id.* While the 1% is said to be owing "*above* the interest rate then applicable" (emphasis added), the 5% figure is said to "equal" the interest rate on default. *Id.* Thus, it is clear that the parties knew how to provide for addition, and did not so provide for the base-line interest rate accruing in the event of default. Thus, Defendant's suggested alternative reading is not available under the plain language of Paragraph IV.

Paragraph VI provides for an interest rate on overdue amounts 5% above (i.e. greater than) the interest rate then applicable under Paragraph I. Paragraphs IV and VI both appear to address the amount of interest owed on amounts that are not paid when due. However, to the extent that they do, they are not in tension, as Paragraph VI expressly cedes to Paragraph IV whenever it is operative. Pl.'s Exs. 4–10, ¶ VI ("Except as provided for in the fourth paragraph of this note ...").

In any event, Defendants apparently concede that they could do no better than a finding of 5% at trial. That is the rate of interest post-default interest that the Government seeks in this motion (plus the uncontested 1%, for a total of 6%). The applicable post-default interest rate is thus not "material" to Defendant's liability, or in any event, is not "in dispute."

### Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. Judgment in the amount of 1,106,905.77, plus interest to be calculated from August 31, 2007, is hereby ordered in favor of Ex–Im Bank. The Government shall present the Clerk with a form of judgment, with interest calculated through the date of judgment.

The foregoing constitutes the decision and order of the court.